FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2021 NOV 10  PM 5: 20

UNITED STATES OF AMERICA

DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

v.

CASE NO. 6:21-cr- 141-ORL- RBD -EJK
18 U.S.C. § 1343
18 U.S.C. § 1957

EMMET BOWENS
a/k/a Emmitt Bowens

## INDICTMENT

The Grand Jury charges:

## COUNTS ONE AND TWO
### (Wire Fraud)

### A.   Introduction

At times material to this Indictment:

1.    The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

2.    In March 2020, the Coronavirus Aid, Relief, and Economic Security Act, or the "CARES Act," was enacted to provide immediate assistance to individuals, families, and organizations affected by the COVID-19 emergency. Among its various provisions, the CARES Act authorized the SBA to guarantee loans under the

Paycheck Protection Program ("PPP"), and the full principal amount of the loans could qualify for forgiveness.

3.     Borrowers were required to use PPP loan proceeds only for enumerated purposes, including payroll costs, rent and utilities, and mortgage interest payments. Knowing misuse of PPP funds would subject borrowers to additional liability, such as charges for fraud.

4.     Under the PPP, the maximum loan amount was the lesser of $10 million or an amount calculated using a payroll-based formula specified in the CARES Act. The payroll-based formula considered the borrower's total payroll costs from the preceding twelve months for all domestic employees. Once an average monthly payroll cost was established, the borrower would multiply that figure by 2.5 to arrive at a total maximum PPP loan amount. This payroll-based formula expressly excluded the compensation of an individual employee in excess of an annual salary of $100,000, prorated as necessary, and, with limited exceptions, businesses with more than 500 employees did not qualify to obtain PPP loans.

5.     To apply for a PPP loan, a potential borrower electronically submitted an SBA Form 2483 with supporting payroll documentation to a financial institution that would administer the loan and serve as custodian of the funds. On the SBA Form 2483, an authorized representative of the business was required to certify information regarding business operations. Those certifications included that: (i) the applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099-MISC; (ii)

2

current economic uncertainty made the loan request necessary to support the applicant's ongoing operations; and (iii) the PPP funds would be used to retain workers and to maintain payroll or pay other qualifying expenses.

6.     Further, when submitting the SBA Form 2483, the authorized representative certified his understanding that, should the PPP funds be knowingly used for unauthorized purposes, the United States could hold him legally liable, including for charges of fraud. The applicant was also required to certify the truth and accuracy of any information provided on the SBA Form 2483 and in all supporting documents, including any documents submitted to verify the applicant's payroll expenses. Such supporting documents could include payroll processor records, bank records, wage records, payroll tax filings with the Internal Revenue Service, or other records sufficient to demonstrate the qualifying payroll amount.

7.     Finally, the applicant was required to certify the following warning regarding false statements and other criminal penalties:

> I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

8.     PPP loan applications would then be processed by participating lenders. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the

application, including information from the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

9.      Buccaneer Technologies LLC. ("Buccaneer") was a State of Florida corporation established on or about May 11, 2020 by the defendant, who listed himself as Buccaneer's CEO and registered agent.

10.      Harvest Small Business Finance, LLC ("Lender") was a financial institution headquartered in California, that participated in the SBA's PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of PPP.

11.      Barclays Bank, East West Bank, Trustco Bank, and Wells Fargo Bank were financial institutions as defined by 18 U.S.C. § 20, the accounts and deposits of which were federally insured by the Federal Deposit Insurance Corporation.

**B.      The Scheme and Artifice**

12.      Beginning on or about an unknown date but at least by or about May 5, 2020, and continuing through on or about May 29, 2020, in the Middle District of Florida, and elsewhere, the defendant,

**EMMET BOWENS**
**a/k/a Emmitt Bowens,**

did knowingly, and with intent to defraud, devise and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of materially false

4

and fraudulent pretenses, representations, and promises, the substance of which scheme and artifice is described below.

### C.   <u>Manner and Means of the Scheme and Artifice</u>

13.   The manner and means by which the defendant sought to accomplish the scheme and artifice to defraud included, among others, the following:

a.   It was part of the scheme and artifice to defraud that the defendant would and did submit and cause the submission of a false and fraudulent PPP loan application to the Lender on behalf of Buccaneer Technologies LLC seeking a PPP loan from the SBA.

b.   It was further part of the scheme and artifice to defraud that the defendant would and did falsely and fraudulently certify that the PPP funds acquired from the requested loan would be used to retain workers, maintain payroll, or make mortgage interest payments, lease payments, and utility payments.

c.   It was further part of the scheme and artifice to defraud that the defendant would and did falsely and fraudulently represent that Buccaneer had 102 employees with an average monthly payroll of $295,833.00.

d.   It was further part of the scheme and artifice to defraud that the defendant would and did submit and cause to be submitted false and fraudulent supporting documentation to the Lender, including, among others, false Buccaneer Annual Federal Unemployment Tax Act (FUTA) tax (IRS Form 940), and false Federal 941 Deposit reports.

e.     It was further part of the scheme and artifice to defraud that the defendant's materially false, fraudulent, and misleading representations and documentation would and did cause the SBA to approve the PPP application and the SBA to issue approximately $739,582.50 in PPP funds to the Lender, which the Lender then deposited into the defendant's personal checking account at Trustco Bank, ending in 4982.

f.     It was further part of the scheme and artifice to defraud that the defendant would and did use and cause the PPP funds to be used for unauthorized purposes and for his own personal enrichment, including purchases at retail stores and restaurants within the Middle District of Florida, as well as purchases at retail stores and restaurants in Arizona, Texas, Mississippi, Georgia, and Tennessee.

g.     It was further part of the scheme and artifice to defraud that the defendant would and did transfer PPP funds from his personal checking account at Trustco Bank to new bank accounts at Barclays Bank that he opened with himself being the sole signatory.

h.     It was further part of the scheme and artifice to defraud that the defendant would and did misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of acts performed in furtherance of the scheme to defraud.

### D. Executions of the Scheme and Artifice

14.     On or about the dates set forth below, in the Middle District of Florida and elsewhere, the defendant,

### EMMET BOWENS
### a/k/a Emmitt Bowens,

for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly, and with intent to defraud, transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, the following writings, signs, signals, pictures, and sounds:

| Count | Date | Interstate Wire |
|-------|------|-----------------|
| ONE | May 5, 2020 | Submission of the PPP loan application from the Middle District of Florida to the Lender, processed using a server located outside of Florida |
| TWO | May 20, 2020 | Wire transfer in the amount of $739,582.50 from the Lender's East West Bank account into Emmet Bowens' Trustco account ending in 4982, processed using a server located outside of Florida |

All in violation of 18 U.S.C. § 1343.

### COUNT THREE
### (Illegal Monetary Transaction)

1.     Paragraphs one through eleven of Counts One and Two of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2.     On or about the dates set forth below, in the Middle District of Florida and elsewhere, the defendant,

**EMMET BOWENS**
**a/k/a Emmitt Bowens,**

did knowingly engage and attempt to engage in the described monetary transaction, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343:

| Count | Date | Approx. Amount | Transaction |
|---|---|---|---|
| **THREE** | May 28, 2020 | $100,000.00 | Draft from Trustco Bank account ending in 4982 in the name of Emmet Bowens to Wells Fargo savings account ending in 0200 in the name of Emmet Bowens |
| **FOUR** | May 29, 2020 | $250,000.00 | Draft from Trustco Bank account ending in 4982 in the name of Emmet Bowens to Barclays account ending in 9467 in the name of Emmet Bowens |

8

| FIVE | May 29, 2020 | $250,000.00 | Draft from Trustco Bank account ending in 4982 in the name of Emmet Bowens to Barclays account ending in 8297 in the name of Emmet Bowens |
| SIX | May 29, 2020 | $115,000.00 | Draft from Trustco Bank account ending in 4982 in the name of Emmet Bowens to Barclays account ending in 8303 in the name of Emmet Bowens |

In violation of 18 U.S.C. §§ 1957 and 2.

## FORFEITURE

1.      The allegations contained in Counts One through Six are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c).

2.      Upon conviction of a violation of 18 U.S.C. § 1343, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3.      Upon conviction of a violation of 18 U.S.C. § 1957, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

4.      The property to be forfeited includes, but is not limited to, the following:

      a.      an order of forfeiture in the amount of $739,582.50, which represents the proceeds obtained from the offenses;

b.      approximately $250,610.82 seized from Barclays Bank account number 1300066779467 held in the name of Emmet Bowens;

c.      approximately $250,668.76 seized from Barclays Bank account number 130006698297 held in the name of Emmet Bowens; and

d.      approximately $115,321.18 seized from Barclays Bank account number 130006698303 held in the name of Emmet Bowens.

5.      If any of the property described above, as a result of any act or omission of the defendant:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

the United States shall be entitled to forfeiture of substitute property under the

provisions of 21 U.S.C § 853(p), as incorporated by 18 U.S.C § 982(b)(1) and 28

U.S.C. § 2461(c).



A TRUE BILL,

_____
Foreperson

KARIN HOPPMANN
Acting United States Attorney

By:   Amanda S. Daniels
Assistant United States Attorney

By:   Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division

11

FORM OBD-34
APR 1991

No.

## UNITED STATES DISTRICT COURT
Middle District of Florida
Orlando Division

### THE UNITED STATES OF AMERICA

vs.

### EMMET BOWENS
a/k/a Emmitt Bowens

## INDICTMENT

Violations:

18 U.S.C. § 1343
18 U.S.C. § 1957

A true bill,

_____
Foreperson

Filed in open court this 10th day of November, 2021.

_____
Clerk

Bail  $_____

GPO 863 525